UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARK HENDRICKSON,

Plaintiff,

v.

WAL-MART ASSOCIATES, INC., et al.,

Defendants.

Case No.: 23-cv-00110-AJB-BJW

**ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION AND SETTLEMENT**

(Doc. No. 97)

Before the Court is the Joint Motion for Preliminary Approval of Class and PAGA Action and Settlement filed by Plaintiff Mark Hendrickson ("Hendrickson") and Defendant Wal-Mart Associates, Inc., ("Wal-Mart"). (Doc. No. 97.)

For the following reasons, the Court **GRANTS** the Joint Motion.

## I. BACKGROUND

### A. Factual Background

This case is a putative class action challenging Wal-Mart's alleged employment practices at its El Centro, California, location. (Doc. No. 97-1 at 9–11.)[1] El Centro has a hot desert climate, with temperatures regularly exceeding 80 degrees Fahrenheit between

[1] Page citations refer to the pagination generated by the Case Management/Electronic Case Files system.

March and October. (*Id.* at 11.) Between June and September, average high temperatures exceed over 100 degrees Fahrenheit. (*Id.*)

Wal-Mart has employed Hendrickson since 1997. (*Id.*) Hendrickson alleges that Wal-Mart's El Centro location maintains unlawful employment patterns and practices related to its employees' exposure to high temperatures and heat-related illnesses. (*Id.*; *see also, e.g.*, Doc. No. 39 ¶¶ 33–50, 65–72, 76, 81–83, 85–86.) Wal-Mart denies these allegations. (Doc. No. 97-1 at 11, 13–14.)

**B. Procedural Background**

On December 14, 2022, Hendrickson initiated this action in San Diego County Superior Court. (Doc. No. 1-2.) Wal-Mart removed the case to federal court. (Doc. No. 1.) Hendrickson revised his complaint multiple times, culminating in the now-operative Fourth Amended Complaint. (Doc. No. 39; *see also* Doc. Nos. 9; 21; 32.) The Fourth Amended Complaint presents three causes of action: (1) failure to provide recovery periods in violation of California Labor Code § 226.7 (Doc. No. 39 ¶¶ 102–34); (2) failure to provide accurate itemized wage statements in violation of California Labor Code §§ 226, 226.3, and 1198 (*id.* ¶¶ 135–46); and (3) representative claims under the California Private Attorneys General Act of 2004 ("PAGA") (*id.* ¶¶ 173–203).[2] The Court remanded a fourth cause of action alleging violations of California's Unfair Competition Law to the San Diego County Superior Court. (*Compare id.* ¶¶ 147–72, *with* Doc. No. 45.)

The parties subsequently participated in an early neutral evaluation with Magistrate Judge Michael S. Berg. (Doc. No. 52.) The parties also engaged in discovery and, at the close of discovery, agreed to mediate. (*See* Doc. No. 82.) On February 12, 2026, the parties participated in a full day of mediation, during which they reached an agreement for a resolution of the pending claims. (Doc. No. 97-1 at 12.)

---

[2] The Court will refer to the first two claims as the "Labor Claims" and the third claim as the "PAGA Claim."

The parties now seek the Court's preliminary approval of the proposed class as well as their proposed settlement agreement. (*See generally id.*) The proposed settlement agreement would resolve both the present action and the remanded action regarding alleged violations of California's Unfair Competition Law. (Doc. No. 97-3 at 2.)

## II. THE PROPOSED SETTLEMENT AGREEMENT

### A. Proposed Class

The parties propose a single "Settlement Class" that consists of "all persons who were classified as hourly non-exempt employees at the [El Centro Wal-Mart superstore] from June 19, 2018[,] to April 24, 2026, and who worked at least one shift on a day when the outdoor temperature reached or exceeded 80 degrees Fahrenheit." (Doc. No. 97-1 at 14; *see also* Doc. No. 97-3 at 2 § 1.2.1.) The parties estimate that the Settlement Class consists of 1,082 individuals. (Doc. No. 97-1 at 9.) Settlement Class members who do not opt out of the proposed settlement would be bound by the settlement of the Labor Claims, if the settlement is approved. (*See* Doc. No. 97-3 at 26.)

The parties also recognize that certain members of the Settlement Class make up a group of "PAGA Employees," which is comprised of "all current and former non-exempt employees who worked for Walmart at the [El Centro Wal-Mart superstore]" at any time between August 19, 2021, and April 24, 2026. (*Id.* at 4 §§ 1.22–.23; *see also* Doc. No. 97-2 ¶ 94.) The parties estimate that there are 787 PAGA Employees. (Doc. No. 97-1 at 9.) The PAGA Employees may not opt-out of the proposed settlement of the PAGA Claim and would be bound by the settlement of the PAGA Claim, if the settlement is approved. (Doc. No. 97-3 at 26.)

### B. Settlement Amount

Wal-Mart will pay a "Gross Settlement Amount" of $400,000.00. (Doc. No. 97-3 at 3–4 § 1.24.) From the Gross Settlement Amount, Class Counsel may seek a fee award of not more than $133,333.33, and a cost award not to exceed $40,000.00. (*Id.* at 8 § 3.22.) The settlement administrator would be compensated for administration costs in an amount not to exceed $12,500.00. (*Id.* at 8 § 3.2.3.) The California Labor & Workforce

Development Agency ("LWDA") and the PAGA Employees would receive $30,000.00, with $22,500.00 (or 75%) going to the LWDA and the remaining $7,500.00 (or 25%) being allocated amongst the PAGA Employees. (*Id.* at 8–9 § 3.2.4.) Finally, Hendrickson may receive a service award of up to $10,000.00. (*Id.* at 7–8 § 3.2.1.) The remaining amount of at least $174,166.67 would be allocated amongst the Settlement Class based on the number of qualifying workweeks each member worked. (*Id.* at 9 § 3.3.)

A qualifying workweek is a workweek in which a Settlement Class member worked at least one shift where the temperature reached or exceeded 80 degrees Fahrenheit. (*Id.* at 5 § 1.27.) The number of qualifying workweeks worked will be determined by referencing the Settlement Class members' employment records and National Weather Service data. (*Id.* at 2 § 1.2.2, 5 § 1.27.)

The parties agree that a Court decision to award class counsel less than $133,333.33 in fees and/or $40,0000.00 in costs will not be a basis for voiding the agreement. (*Id.* at 8 § 3.2.2.) The parties similarly agree that a Court decision to award Hendrickson less than $10,000.00 as a service award will not be a basis for voiding the agreement. (*Id.* at 7–8 § 3.2.1.)

**C. Notice and Administration**

The parties have selected Apex Class Action LLC ("Apex") to administer the settlement. (Doc. No. 97-1 at 15.) Apex indicates that its administration fees will not exceed $12,500.00. (Doc. No. 97-10 ¶ 7.)

Within fourteen days of receiving preliminary approval of the settlement, Wal-Mart would provide Apex with a "Class List" identifying the members of the Settlement Class. (*See* Doc. No. 97-1 at 18; *see also* Doc. No. 97-3 at 14–15 § 8.1.)

Within fourteen days of receiving the Class List, Apex must determine the total number of qualifying workweeks worked as well as how to allocate the distribution of settlement amounts. (Doc. No. 97-3 at 14 § 8.3; *see also id.* at 27.) By the end of this fourteen-day period, Apex must send notice of the proposed settlement agreement via

first-class U.S. mail to all Settlement Class and PAGA Employees members. (Doc. No. 97-3 at 15 § 8.3.)

The proposed notice provides detailed information about this action, including what the lawsuit is about, why there is a settlement, who is included in the settlement, what the terms of the proposed settlement are, what the impact of the proposed settlement would be on the Settlement Class members' rights, the recipient's estimated payment amount(s), how members would receive payment, how to object to or be excluded from the settlement, who represents the members, how to obtain additional information, and when and where a final approval hearing will be held. (*Id.* at 25–32.) The proposed notice also explains how Apex calculates each member's payment amount(s) and informs members that they can provide more information to dispute Apex's calculation. (*Id.* at 27.)

**D. Objections and Opt Out Procedure**

The proposed notice explains that Settlement Class members can respond in three ways to the proposed settlement. Specifically, Settlement Class members may (1) do nothing, (2) opt out, or (3) object. (*Id.* at 26.) To opt out of the Settlement Class, a member must send a letter to Apex that is postmarked within 45 days of the notice, includes specific personal information about the member, states that the member wishes to be excluded from the proposed settlement, and includes the member's signature. (*Id.* at 29–30.) To object, a Settlement Class member must submit their objection to the Court in writing within 45 days of receiving the notice. (*Id.* at 30.) After timely submitting a written objection, the member may also appear at a final approval hearing. (*Id.*)

In contrast, the PAGA Employees would not have any options in how to respond to the proposed settlement of the PAGA claim. "All PAGA Employees will receive their pro-rata share of the PAGA Payment regardless of whether they opt out of the Settlement." (*Id.* at 26.)

**E. Attorney Fees, Costs, and Class Representative Award**

The proposed settlement agreement allows for the payment of attorney fees, litigation costs, and a class representative award from the Gross Settlement Amount. (*Id.* at 7–8 § 3.2.)

Specifically, the proposed settlement agreement provides that the Court may award

> A Class Counsel's Fees payment of not more than 1/3 of the Gross Settlement Amount or One Hundred Thirty-Three Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($133,333.33), and Class Counsel's Costs payment not to exceed $40,000.00 as reimbursement for actual and documented costs incurred in the Action. Defendant will not oppose requests for these payments. If the Court approves a payment amount for Class Counsel's Fees and/or Class Counsel's Costs that is less than the amount requested, any amounts not awarded will revert to the Net Settlement Fund for payment to Participating Settlement Class Members.

(*Id.* at 8 § 3.2.2.) The proposed notice indicates that the "Class Attorneys' fees = $133,333.33 (requested)" and that the "Class Attorneys' out-of-pocket expenses = up to $40,000.00." (*Id.* at 27.)

The proposed settlement agreement also states that the Court may award a

> Class Representative Service Payment to the Class Representative Mark Hendrickson of not more than Ten Thousand Dollars ($10,000), which is in addition to any Individual Class Payment and/or any Individual PAGA Payment he may be entitled to receive as a Class Member and/or PAGA Employee. Defendant will not oppose Plaintiff's Request for a Class Representative Service Award that does not exceed this amount. Any amounts not awarded (i.e. less than $10,000.00) will revert to the Net Settlement Fund for payment to the Class Members who do not opt out of the Settlement (the "Participating Settlement Class Members").

(*Id.* at 7 § 3.2.1.) The proposed notice similarly states "Plaintiff is also seeking a Service Award for his service to the Class." (*Id.* at 27.)

**F. Releases**

In exchange for Wal-Mart's $400,000.00 payment, Settlement Class members who do not opt out would release

> all claims, actions, demands, causes of action, suits, debts, obligations, demands, rights, liabilities, or legal theories of relief, that are alleged in any pleading in the Action or that could have been alleged based on the facts and legal theories asserted in any pleading in the Action, including without limitation claims for (1) failure to provide recovery periods and pay premium wages under Labor Code sections 226.7 and 6720 and California Code of Regulations, Title 8, Section 3395; (2) failure to prevent heat-related illnesses under Labor Code Section 6720; (3) failure to maintain accurate records under Labor Code sections 1174, 1174.5, and 1198, and the "Records" section of IWC Wage Order No. 7-2001; (4) failure to furnish accurate itemized wage statements under Labor Code sections 226, 226.3, and 1198; (5) failure to timely pay wages during and after separation of employment under Labor Code sections 201–204, 210, 1194, 1194.2, 1198, and the "Minimum Wages" section of IWC Wage Order No. 7-2001, and (6) engaging in unlawful, unfair, and/or fraudulent business practices in violation of Business and Professions Code section 17200 et seq.

(*Id.* at 10–11 § 5.1.)

The PAGA Employees would additionally release

> all claims pursuant to the California Private Attorneys General Act (codified in Labor Code section 2698 et seq.) based on the facts and legal theories asserted in the PAGA Notice or the operative complaint in the Action, which relate to the primary rights asserted in any pleading in the Action, or that could have been alleged in the PAGA Notice or the operative complaint in the Action based on the facts and legal theories asserted in any the [*sic*] PAGA Notice or any pleading in the Action, including without limitation claims for violations of Labor Code sections 201, 202, 203, 204, 210, 218.5, 218.6, 221, 223, 225.5, 226, 226.3, 226.7, 510, 512, 558, 558.1, 1174, 1174.5, 1193.6, 1194, 1194.2, 1197, 1197.1, 1198, 2802, and 6720.

(*Id.* at 11 § 5.2.)

Additionally, Hendrickson would release the same claims as the Settlement Class members and PAGA Employees, as well as

> any and all known or unknown liabilities, claims, demands for damages, costs, attorneys' fees, indemnification, contribution, or any other thing for which Plaintiff has or may have, including known or unknown causes of action, claims, or demands for damages, costs, attorneys' fees, indemnification, or contribution, whether certain or speculative, class or individualized, which may have come into existence at any time prior to execution of this Settlement, or that may be brought in the future in connection with any acts or omissions

> that have arisen at any time prior to execution, including any and all claims that Plaintiff has actually alleged or could have alleged to date, without regard to the scope of the allegations in this lawsuit, including, but not limited to, any and all claims that Plaintiffs have actually alleged or could have alleged to date, any and all claims arising out of Plaintiffs' work for Defendant and/or employment status, any claims related to FMLA or CFRA leave, any claims that Plaintiffs were wrongfully terminated or have been discriminated against or retaliated against in any way, or that Plaintiffs' privacy rights have been violated in any way, any and all claims arising under a "whistleblower" statute (including any claims arising under Labor Code §§ 6310, 1102.5), any and all claims for wage and hour violations, any and all claims for tortious conduct resulting in personal injuries or intentional infliction of emotional distress, any and all claims for violations under the California Business and Professions Code Section 17200, and any and all claims for or related to harassment, discrimination or retaliation on the basis of race, color, national origin, religion, gender, age, sexual orientation, ancestry, medical condition, marital status, pregnancy, physical or mental disability, associational disability, or other protected class, discharge in violation of public policy and/or violation of any state and federal laws, regulations, or constitutions, including without limitation, the *Age Discrimination in Employment Act* ("ADEA") and its amendment, the *Older Workers Benefit Protection Act* ("OWBPA"), the *California Fair Employment and Housing Act* ("FEHA"), the *Americans with Disabilities Act*, *Title VII of the Civil Rights Act of 1964*, as amended, Secs. 503 at 504 of the *Rehabilitation Act of 1973*, as amended, *The Fair Labor Standards Act*, as amended, *the National Labor Relations Act*, as amended, *the Labor – Management Relations Act*, as amended, *the Worker Adjustment and Retraining Notification Act of 1988*, as amended, *the Pregnancy Discrimination Act*, *the Employee Retirement Income Security Act of 1974*, as amended, *the Family Medical Leave Act of 1993*, as amended, *the California Family Rights Act*, as amended, and *the California Labor Code*, including divisible individual claims under the Private Attorneys General Act, Labor Code § 2698, et seq, [*sic*] and *the California Wage Orders*.

(*Id.* at 11–12 § 5.3.) Hendrickson also "expressly waives any and all rights granted under any state or federal law or regulation limiting the effect of this general release, including the provisions of section 1542 of the California Civil Code, which are hereby expressly waived." (*Id.* at 12 § 5.3.2.)

## III. LEGAL STANDARD

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.* ("*Volkswagen*"), 895 F.3d 597, 606 (9th Cir. 2018) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).

Class members must be provided "notice in a reasonable manner" of a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Further, a court may only approve a proposed settlement "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Under this standard, district courts can neither rubberstamp the settlement nor unduly meddle in the parties' affairs." *In re Cal. Pizza Kitchen Data Breach Litig.* ("*CPK*"), 129 F.4th 667, 674 (9th Cir. 2025).

A settlement notice must "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id.* (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

In considering whether to approve a proposed settlement, courts examine the fairness of "the settlement taken as a whole, rather than the individual component parts." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

The court's examination must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors "bake[] into the text of Rule 23(e)" the key factors that Ninth Circuit courts have traditionally considered:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*CPK*, 129 F.4th at 674; *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

"The district court's [final] approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not[] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prods. Liab. Litig.* ("*Bluetooth*"), 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.* ("*Mego*"), 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000)). "However, some of the . . . factors cannot be fully assessed until the court conducts its fairness hearing." *Zwicky v. Diamond Resorts Mgmt., Inc.*, 343 F.R.D. 101, 119 (D. Ariz. 2022) (citation omitted).

> Thus, at the preliminary approval stage, courts need only evaluate whether the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential treatment to class representatives or segments of the class and (4) falls within the range of possible approval.

*Id.* (internal quotation marks and citation omitted).

## IV. DISCUSSION

### A. Conditional Class Certification

Before granting preliminary approval of a settlement agreement in a putative class action, the Court must first determine whether the proposed class can be certified. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Comms., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (citing *Amchem*, 521 U.S. at 613–14). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements." *Staton*, 327 F.3d at 952 (citation omitted; cleaned up).

#### 1. Proposed Settlement Class

Again, the parties propose a Settlement Class that consists of "all persons who were classified as hourly non-exempt employees at the [El Centro Wal-Mart superstore] from June 19, 2018[,] to April 24, 2026, and who worked at least one shift on a day when the outdoor temperature reached or exceeded 80 degrees Fahrenheit." (Doc. No. 97-1 at 14; *see also* Doc. No. 97-3 at 2 § 1.2.1.) The Settlement Class includes all PAGA Employees, who are "all current and former non-exempt employees who worked for Walmart at the [El Centro Wal-Mart superstore]" at any time between August 19, 2021, and April 24, 2026. (Doc. No. 97-3 at 4 §§ 1.22–.23; *see also* Doc. No. 97-2 ¶ 94.)

The parties' identification of PAGA Employees does not affect the Court's analysis because "PAGA suits exhibit virtually none of the procedural characteristics of class actions, so there is no need for courts to consider adequacy of representation, numerosity, commonality, or typicality, and no need for certification under Rule 23, as the Rule 23 requirements are a logical mismatch for PAGA actions." *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575, 583–84 (9th Cir. 2022) (cleaned up).

**2. Rule 23(a) Factors**

Pursuant to Rule 23(a), a representative party may sue on behalf of all members of a class only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

"The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiffs' claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation omitted; cleaned up).

**a. Numerosity**

The numerosity requirement is satisfied where "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (citation omitted; cleaned up). "Although the Supreme Court has held that 'the numerosity requirement . . . imposes no absolute limitations,' courts generally find this requirement satisfied when a class includes at least forty members." *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 213 (E.D. Cal. 2015) (quoting *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980); citing *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)).

The parties estimate that the Settlement Class consists of 1,082 individuals. (Doc. No. 97-1 at 9.) This is more than 40 members, so the Court conditionally finds the numerosity requirement has been met. *Pena*, 305 F.R.D. at 213.

**b. Commonality**

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v.*

*Falcon*, 457 U.S. 147, 157 (1982)). "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted; cleaned up).

The claims in this action arise from common facts—namely, the working conditions provided by Wal-Mart for the Settlement Class members. (*See* Doc. No. 97-1 at 20.) They also present common legal issues—whether the working conditions complied with California law. (*See id.*)

Under these circumstances, the Court is persuaded that these common facts and legal issues are likely to generate common answers that can drive the resolution of this action. *See Dukes*, 564 U.S. at 350. In turn, the Court conditionally finds the commonality requirement has been met.

**c. Typicality**

Under Rule 23(a)(3)'s "permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957 (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id.* (citation omitted).

The Court conditionally finds the typicality requirement has been met. To the extent the Settlement Class members have been injured, their injuries would be the same or similar insofar as they are tied to the working conditions Wal-Mart provided at its El Centro superstore. (*See* Doc. No. 97-1 at 21.) In turn, the conduct is "not unique to the named plaintiff[]" and the unnamed class members would "have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508.

**d. Adequacy of Representation**

When analyzing the adequacy of representation, courts consider two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020).

**i. Hendrickson**

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Feight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). "Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process." *Volkswagen*, 895 F.3d at 607 (citing *Hanlon*, 150 F.3d at 1020).

Notably, incentive awards for class representatives require careful scrutiny to ensure that the awards "do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citing *Staton*, 327 F.3d at 977). This is of special concern in the settlement process, where a representative "may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Staton*, 327 F.3d at 975 (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989)). A significant disparity between an incentive award and the payments unnamed class members receive can present a significant conflict of interest. For instance, "[t]here is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Radcliffe*, 715 F.3d at 1165.

Hendrickson represents that he has the same interests and injuries as the class members, as he "was employed by Walmart during the Class period and belongs to the Class he seeks to represent." (Doc. No. 97-1 at 21.) Furthermore, Hendrickson "has spent

significant amounts of time and made personal sacrifices to act as the named Plaintiff in this case." (*Id.*) This has included "attending in-person meetings, participating in multiple phone conferences, providing valuable factual information and documentation, partaking in written discovery, participating in long depositions, participating in one settlement conference and one mediation, and undertaking necessary steps to protect the best interests of the class at all times." (*Id.*)

The Court notes, however, that the Proposed Settlement Agreement requests a "Class Representative Service Award," or incentive award, of up to $10,000 for Hendrickson. (Doc. No. 97-3 at 7 § 3.2.1.) Hendrickson's counsel contends that the incentive award is "reasonable" based on the above representations. (Doc. No. 97-2 ¶¶ 134–39.) She adds that Hendrickson has "assumed the risk of an adverse judgment and the financial responsibility of such judgment by bringing and maintaining the action." (*Id.* ¶ 137.) Hendrickson will also make a general release of claims beyond the unnamed Class members' releases. (*Id.* ¶ 138.)

Under these circumstances, the Court is preliminarily satisfied that Hendrickson's interests aligned with the proposed Settlement Class members' and that Hendrickson has vigorously prosecuted the action on behalf of the class. *See Staton*, 327 F.3d at 957.

Nevertheless, the Court has reservations regarding the proposed $10,000 incentive award, especially in light of the facts that Hendrickson and his counsel (1) do not address the potential conflict of interest that an incentive award can create and (2) do not provide an approximation of the average settlement that the unnamed Class members will receive. Moreover, a $10,000 incentive award appears potentially excessive compared to other awards authorized in this District. *See, e.g.*, *Thompson v. Costco Wholesale Corp.*, No. 14-cv-02778-CAB-WVG, 2017 WL 3840342, at *10 (S.D. Cal. Sept. 1, 2017) (awarding $2,000); *Smith v. Kaiser Found. Hosps.*, No. 18-cv-00780-KSC, 2020 WL 5064282, at *20–21 (S.D. Cal. Aug. 26, 2020) ($7,500, $5,000, and $2,500); *Heid v. Cyracom Int'l, Inc.*, No. 22-cv-01445-MMA-KSC, 2024 WL 4008650, at *13–14 (S.D. Cal. Aug. 30, 2024) ($7,500).

Accordingly, the parties' future motion for final approval must address:

(1) the legal and factual basis supporting the request for a $10,000 incentive award;

(2) the estimated number of hours Hendrickson has expended to further this litigation;

(3) the average settlement payment to the unnamed class members; and

(4) whether Hendrickson can be expected to fairly evaluate the value of the average settlement payment when he would receive an up to $10,000 incentive award.

Subject to these reservations, the Court finds that Hendrickson has sufficiently satisfied the adequacy requirement for preliminary approval.

**ii. Class Counsel**

"The named representative's attorney must be qualified, experienced, and generally capable to conduct the litigation." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (quoting *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1323 (9th Cir. 1982), *vacated on other grounds by County of Los Angeles v. Jordan*, 459 U.S. 810 (1982)) (cleaned up).

The Court is satisfied that Hendrickson's counsel Vilmarie Cordero has and will continue to serve as adequate class counsel. Ms. Cordero indicates that she has been a licensed attorney since 2006 and has been appointed as class counsel in over 150 class action lawsuits. (Doc. No. 97-2 ¶¶ 6, 8.) She additionally identifies 24 other class and representative actions in which she currently serves as counsel, and notes that her firm "has considerable experience handling complex wage and hour class action cases with claims similar to those asserted in this action." (*Id.* ¶¶ 11–12.) In support, Ms. Cordero provides a 15-page document listing cases in which her firm (or its predecessor entities) has served as class counsel or co-class counsel. (Doc. No. 97-5)

Accordingly, the Court finds that the adequacy of representation requirement is conditionally satisfied by Ms. Cordero.

### 3. Rule 23(b) Factors

"A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### a. Predominance

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 577 U.S. at 453 (citation omitted; cleaned up). Although Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement have "substantial overlap," Rule 23(b)(3) is "far more demanding" and asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

As previously discussed, the claims in this action arise from common facts that give rise to common legal issues. (*Supra* at 12–13.) As relevant here, a resolution of, for example, Hendrickson's claim that Wal-Mart failed to provide recovery periods in violation of California Labor Code § 226.7 pursuant to a pattern and practice at the El Centro superstore, would apply to all of the Settlement Class's members insofar as their injuries arise from the alleged pattern and practice. (*See* Doc. No. 39 ¶¶ 102–34.) Thus, the Court finds that the predominance requirement is preliminarily met here.

**b. Superiority**

In determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," courts consider (1) the interest of class members individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the manageability of a class action. Fed. R. Civ. P. 23(b)(3); *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), *as amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

Based on the present record, the Court is persuaded that the superiority requirement is also preliminarily met. First, the parties estimate that the Settlement Class consists of 1,082 individuals. (Doc. No. 97-1 at 9.) Hendrickson's counsel calculates that the maximum potential class damages and penalties for the Labor Claims would be $1,423,697.27. (Doc. No. 97-2 ¶ 66.) This works out to an average of less than $1,316 per class member. Although this is not an insignificant amount, "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190. Second, neither party identifies, nor is the Court independently aware of, any other pending litigation over the present facts and claims. Third, Hendrickson's claims arise from employment in El Centro, California, and the relevant evidence in support of those claims is likely to be found in this District. These three considerations thus weigh in favor of certification. *Id.* at 1190–92. As for the manageability consideration, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

**4. Conclusion**

In sum, Hendrickson satisfies the requirements of Rule 23(a) and the Rule 23(b) considerations weigh in favor of certification for settlement purposes. Accordingly, the

Court **APPOINTS** Hendrickson as Class Representative and Vilmarie Cordero of Arch Legal, P.C., as Class Counsel.

**B. Preliminary Approval of Class Settlement**

**1. Rule 23(e)(2) Factors**

**a. Adequacy of Representation by Class Representatives**

For the reasons discussed previously, the Court finds that this factor weighs in favor of preliminary approval. (*Supra* at 14–16.)

**b. Signs of Collusion**

Courts must ensure that a class settlement is "not . . . the product of collusion among the negotiating parties." *Mego*, 213 F.3d at 458. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citations omitted). The Ninth Circuit has recognized three "hallmarks" or "red flags" of collusion. *Briseño v. Henderson*, 998 F.3d 1014, 1025–27 (9th Cir. 2021). These are:

> (1) when class counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) a "clear sailing" provision under which attorney fees are paid separate and apart from class funds, which allows a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) a "reverter" provision under which unawarded fees revert to the defendants and are not added to a class fund.

*See Bluetooth*, 654 F.3d at 947. Ninth Circuit courts must look for these *Bluetooth* factors when evaluating pre- and post-class certification settlements. *Briseño*, 998 F.3d at 1026.

The parties participated in an early neutral evaluation with Magistrate Judge Berg as well as a full day of private mediation. (Doc. Nos. 52; 89.) The proposed settlement agreement before the Court is the product of the mediation. (Doc. No. 97-1 at 12.) The fact that this settlement was reached with the assistance of an experience mediator suggests that

the settlement is fair and reasonable. *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 620 (N.D. Cal. 2014).

However, the Court notes that the proposed settlement may run afoul of two of the three *Bluetooth* factors.

First, Class Counsel is seeking up to $133,333.33 in fees and up to $40,000.00 in costs, or 43.333% of the Gross Settlement Amount. (*See* Doc. No. 97-1 at 9–10.) This is potentially a "disproportionate distribution of the settlement." *Bluetooth*, 654 F.3d at 947. "In a common fund case, such as this, the district court has the discretion to choose between either the lodestar or the percentage-of-fund methods when calculating fees." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016). Under the latter, "the district court may award plaintiffs' attorneys a percentage of the common fund, so long as that percentage represents a reasonable fee." *Id.* (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994)). "The benchmark percentage is 25%, but . . . the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *In re Apple Inc. Device Performance Litig.* ("*Apple Device*"), 50 F.4th 769, 784 (9th Cir. 2022) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019)).

"[I]n assessing a request for attorneys' fees that was calculated using the percentage-of-recovery method," courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.* ("*Online DVD-Rental*"), 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *Apple Device*, 50 F.4th at 784. "Reasonableness is the goal, and

mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Stanger*, 812 F.3d at 739 (quoting *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1007 (9th Cir. 2002)).

Class Counsel indicates that "[c]ourts in the Ninth Circuit regularly award attorneys' fees of one-third of the total class settlement value." (Doc. No. 97-1 at 30 (citing cases).) Class Counsel adds that she "has performed a significant amount of work to date, including conducting extensive research, investigation, and analysis into each potential cause of action." (*Id.* (citing Doc. No. 97-2 ¶¶ 122–27).) Further, Class Counsel indicates that her current lodestar "exceeds $591,000, and Class Counsel will continue to devote time and effort to this litigation." (Doc. No. 97-1 at 30–31 (citing Doc. No. 97-2 ¶ 127).) In her declaration, Class Counsel states that her firm has devoted over 1,100 hours to this action. (Doc. No. 97-2 ¶ 127.) This produces an average rate of $537.27 per hour.

Second, the proposed settlement agreement contains a clear sailing provision that Wal-Mart will not object to Class Counsel's request for up to $133,333.33 in fees and $40,000.00 in costs. (Doc. No. 97-3 at 8 § 3.2.2.) *See also Bluetooth*, 654 F.3d 947. Clear sailing provisions, "'by their nature deprive the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *Id.* at 949 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)) (cleaned up).

Third, however, the proposed settlement agreement does not include a reverter provision. Rather, "any amounts [from the requested Class Counsel payment] not awarded will revert to the Net Settlement Fund for payment to Participating Settlement Class Members." (Doc. No. 97-3 at 8 § 3.2.2.) Additionally, any unclaimed payments to the Class Members will be transmitted to the California State Controller's Unclaimed Property Fund in the intended recipient's name. (*Id.* at 10 § 4.2.3.)

The Court cannot say at this stage that the requested attorney fees constitute a disproportionate distribution of the settlement such that preliminary approval should be denied. "Given the questionable features of the fee provision here, [however,] the court [i]s required to examine the negotiation process with even greater scrutiny than is ordinarily

demanded, and approval of the settlement ha[s] to be supported by a clear explanation of why the disproportionate fee is justified and does not betray the class's interests." *Bluetooth*, 654 F.3d at 949. The Court accordingly notes that it will closely scrutinize Class Counsel's requested fees in a future Rule 23(h) motion. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021). In such a motion, the Court expects Class Counsel to provide:

(1) a detailed explanation for the requested attorney fees addressing all of the Ninth Circuit's applicable factors;

(2) documentation to justify the requested attorney fees;

(3) declarations addressing reasonableness of the requested hourly rate, considering prevailing rates for counsel of comparable experience, skill, and reputation in the **Southern District of California**; and

(4) itemized records reflecting the requested litigation costs.

**c. Adequacy of Relief**

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citations omitted). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Mego*, 213 F.3d at 459 (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)). More pointedly, "courts do not have a duty to maximize settlement value for class members." *CPK*, 129 F.4th at 678.

**i. Amount of recovery**

Hendrickson asserts that Wal-Mart's maximum exposure for the Class's claims and to PAGA penalties is $3,074,885.27. (Doc. No. 97-1 at 26.) The parties acknowledge that the $400,000.00 Gross Settlement Fund "represent[s] a significant discount." (*Id.*) After accounting for attorney fees, costs, service awards, and the PAGA settlement, the parties note that each class member would be entitled to approximately $1.52 for each Qualifying

Workweek. (*Id.*) According to the parties, this settlement "represents exceptional value to the Class Members" and provides "a great result for the Class." (*Id.*)

The Gross Settlement Fund represents 13% of Wal-Mart's estimated exposure. (*See id.* at 14, 26.) Other courts have found settlements representing 12% to 35% of the estimated maximum recovery to provide adequate relief. *See Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *14 (E.D. Cal. Apr. 27, 2020) (citing cases). Accordingly, the Court finds that the amount of recovery weighs in favor of a preliminary finding of adequacy.

**ii. Strength of the Class's case; risk, expense, complexity, and likely duration; and risk of maintaining class action status**

When assessing "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), Ninth Circuit courts evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026 (citation omitted). It "is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Just.*, 688 F.2d at 628. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

The parties note that Hendrickson must prove multiple elements to prevail on his claims, including that (1) temperatures at the El Centro store exceeded 80 and 95 degrees Fahrenheit; (2) California law imposes certain obligations on Wal-Mart when temperatures exceed 80 and 95 degrees Fahrenheit; (3) Wal-Mart failed to comply with its obligations; and (4) the failure to comply caused violations of California Labor Code. (Doc. No. 97-1 at 24.) The parties acknowledge that Hendrickson must show other related elements as well. (*Id.*) Hendrickson admits that "this is a novel issue, and that he faces a significant

battle in proving liability and justifying penalties and unpaid wages, even if class certification is granted." (*Id.* at 25.)

In contrast, Wal-Mart maintains that it complied with California law and asserts that Hendrickson cannot satisfy Rule 23's class certification requirements. (*Id.* at 24–25.)

Considering these circumstances, the parties admit that "there is a likelihood that continued litigation would carry with it significant risks and expenses and be very lengthy in duration." (*Id.* at 25.) They add that "Defendant would likely file an appeal if a judgment is entered in Plaintiff's favor." (*Id.*)

Given the risks and uncertainties identified by the parties, as well as the likely delay in resolution that would be created by ongoing litigation, this factor weighs in favor of preliminary approval. *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 526.

**iii. Proposed award of attorney fees and litigation costs**

A court must consider "the terms of any proposed award of attorney's fees" to determine "whether the attorneys' fees arrangement shortchanges the class." *Briseño*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)). Courts "must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Id.* (cleaned up).

The proposed settlement provides that no more than one third of the Gross Settlement Amount, or a total of $133,333.33, would be awarded as attorney fees to Class Counsel. (Doc. No. 97-3 at 8 § 3.2.2.) Additionally, no more than $40,000.00 would be provided to reimburse Class Counsel's costs. (*Id.*) However, the settlement is not contingent upon the Court awarding the full amounts to Class Counsel. (*Id.*)

To support the requested awards, Class Counsel indicates that she "has performed a significant amount of work to date, including conducting extensive research, investigation, and analysis into each potential cause of action." (Doc. No. 97-1 at 30.) Her lodestar rate "exceeds $591,000, and Class Counsel will continue to devote time and effort to this litigation." (*Id.* at 30–31.)

The Court is satisfied that the proposed attorney fees and costs awards fall within a preliminarily approvable range. Nevertheless, as previously noted, the Court is concerned that these may be disproportionate awards. (*Supra* at 21–22.) The Court will thus review Class Counsel's records in support of her future Rule 23(h) motion to also determine whether the proposed attorney fees and costs improperly infringe on the adequacy of the relief granted.

**iv. Effectiveness of the proposed distribution method**

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible in as simple and expedient a manner as possible." 4 Newberg and Rubenstein on Class Actions § 13:53 (6th ed. 2026).

Under the terms of the Settlement, each Class member will automatically be included in the Settlement unless they opt out. (Doc. No. 97-2 ¶ 88.) Class members therefore will not be required to submit a claim form. (Doc. No. 97-3 at 15 § 8.2.) Instead, Apex will notify Class members of the settlement and inform each Class member of their estimated settlement allocation. (*Id.*; *see also id.* at 27) Class members will then have 45 days to opt out of the Settlement, object to the Settlement, or challenge Apex's calculation of their estimated settlement allocation. (*Id.* at 27.)

Within 30 days of the Settlement's Effective Date,[3] Wal-Mart will pay the Gross Settlement Amount to Apex. (*Id.* at 9 § 4.1.) Within 14 days of receiving the Gross Settlement Amount, Apex will distribute payment checks to the Class members. (*Id.* at 9 § 4.2.) If a payment check is not cashed, Apex will transmit the uncashed payment to the California State Controller's Unclaimed Property Fund in the recipient's name. (*Id.* at 10 § 4.2.3.)

---

[3] The Effective Date is "the later of (a) the 61st day (unless the last such date is a weekend or holiday, in which case the next business day shall be used) after the Court enters an order granting final approval of the Settlement provided that no timely appeal is taken of the order granting final approval and entering judgment in the Action; or (b) if an objection is filed and not withdrawn, the date for filing an appeal and no such appeal being filed; or (c) the final resolution of any timely appeal that has been filed, provided, however, that the result of the appeal has not altered any material terms of the settlement." (*Id.* at 3 § 1.12.)

The Court finds that this proposed distribution method is reasonable and efficient, and therefore weighs in favor of preliminary approval.

**d. Equitable Treatment of Class Members**

Class counsel contends that the proposed Settlement treats all Class members equitably and fairly because "Class Members who worked a larger number of workweeks and presumably experienced more violations would receive a larger portion of the Settlement." (Doc. No. 97-2 ¶ 101.)

The Court agrees that the proposed allocation of Settlement funds based on the Class Members' qualifying workweeks provides equitable treatment amongst the Class Members because it provides a uniform method by which to allocate funds.

Nevertheless, the Court notes that, on its face, the Settlement does not provide complete equity between Hendrickson and the unnamed Class members because the proposed Settlement anticipates Hendrickson receiving an incentive award of up to $10,000. (Doc. Nos. 97-2 ¶¶ 134–39; 97-3 at 7–8 § 3.2.1.) Class counsel notes, however, that Hendrickson has provided substantial assistance to furthering this litigation and will execute a general release of claims that is more expansive than the releases that the Class members will execute. (Doc. No. 97-2 ¶¶ 135–36, 138.)

Considering Hendrickson's contributions and greater release, the Court is preliminarily satisfied that the Settlement treats Hendrickson and the unnamed Class members sufficiently equitably that this factor weighs in favor of preliminary approval.

**2. Additional Ninth Circuit Factors**

**a. Experience and Views of Counsel**

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Great weight is [thus] accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528 (citation and internal quotation marks omitted).

Here, "[b]oth Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (citations omitted).

This factor weighs in favor of preliminary approval.

**b. Reaction of Class Members**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528–29).

At this stage, the parties have not yet notified the unnamed Class members of the proposed settlement agreement. Because not all Class members have had an opportunity to weigh in, this factor is neutral.

**c. Presence of a Government Actor**

The support of a governmental participant in a class action settlement generally weighs in favor of approval. *See J.L. v. Ciccinelli*, No. 18-cv-04914-NC, 2019 WL 6911973, at *3 (N.D. Cal. Dec. 18, 2019).

Here, no government actor has participated in any stage of this litigation. This factor is therefore neutral.

**d. Incentive Awards for Named Plaintiffs**

As previously discussed, the Court has concerns about the proposed incentive award for Hendrickson. (*Supra* at 14–16.) The Court will accordingly wait for more information from the parties before resolving whether this factor weighs for or against approval.

**e. Settlement Administration, Form and Method of Proposed Notice**

To ultimately approve a class action settlement, a district court must ensure the class members were notified of the proceedings; had the opportunity to opt out or, for those who

remain in the settlement, to object to any of the settlement's terms; and had the chance to appear at a fairness hearing. Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5).

Rules 23(c)(2)(B) and (e)(1) generally require that a settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Regular mail, electronic mail, and other appropriate means should all be considered. *Id.* "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575 (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Based on the Court's review of the proposed notice (*see supra* at 4–5), the Court concludes that the proposed notice complies with Rule 23's requirements. Furthermore, the parties' proposed methodology for administering the Settlement does not raise any concerns. (*Supra* at 25–26.) The Court thus finds that this factor weighs in favor of preliminary approval.

**3. Conclusion**

Based on the foregoing discussion, the Court finds that a majority of the Rule 23(e)(2) and Ninth Circuit factors weigh in favor of granting preliminary approval. However, the parties will have to address the Court's concerns adequately in a final approval motion to obtain final approval.

**C. Preliminary Approval of PAGA Settlement**

The Court now turns to the settlement of the PAGA claim. Pursuant to California Labor Code § 2699(s)(2), the Court "shall review and approve any settlement of any civil action filed pursuant to this part." Federal courts apply a "Rule 23-like standard" in the absence of authority governing the standard for review and approval of PAGA settlements. *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

**1. PAGA Statutory Requirements**

Under PAGA's remedial scheme, 25% of the awarded civil penalties are distributed to "the aggrieved employees" and 75% are distributed to the LWDA. Cal. Lab. Code § 2699(i) (2022).[4] The proposed settlement must be sent to the LWDA at the same time it is submitted to the court. Cal. Lab. Code § 2699(s)(2). "Because an aggrieved employee's action under the Labor Code Private Attorneys General Act of 2004 functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Arias v. Sup. Ct.*, 46 Cal. 4th 969, 986 (2009). "Thus, in a lawsuit which asserts a PAGA claim and seeks class certification for labor/wage claims, even class members who opt out of the class would be bound by an adverse PAGA judgment or settlement." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). In other words, aggrieved employees may not opt out of an approved settlement.

Here, the proposed Settlement comports with PAGA's statutory requirements.

First, the proposed Settlement allocates a $30,000 payment to the LWDA and PAGA Employees to resolve the PAGA claim. (Doc. No. 97-3 at 8–9 § 3.2.4.) Of the $30,000 payment, $7,500 or 25% will be distributed to the PAGA Employees, while $22,500 or 75% will be provided to the LWDA. (*Id.*)

Second, the parties submitted the Settlement to the LWDA on the same day that they filed the present motion. (Doc. No. 97-4.)

Third, the Settlement acknowledges that "no Class Members or PAGA Employees may opt out of the Settlement with respect to the PAGA Release." (Doc. No. 97-3 at 16 § 8.7.3.) The proposed notice form also informs PAGA Employees that "[r]egardless of

---

[4] In 2024, California amended PAGA to allocate 35% of the awarded civil penalties to the aggrieved employees and 65% to the LWDA. Cal. Lab. Code § 2699(m) (2024). The amended allocation does not apply here because Hendrickson initiated the present action prior to June 19, 2024. *See* Cal. Lab. Code § 2699(v)(1).

whether or not you opt out of the Class, you cannot opt out of the PAGA settlement and you will not be able to pursue the released PAGA claims." (*Id.* at 29.)

**2. Fairness, Adequacy, and Reasonableness of PAGA Allocation**

"It is important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *Haralson*, 383 F. Supp. 3d at 971 (quoting *O'Connor*, 201 F. Supp. 3d at 1133).

Here, the Settlement allocates $7,500 for the 787 PAGA Employees, which works out to a rough average of $9.53 per PAGA member if the payments are evenly divided. (*See* Doc. Nos. 97-1 at 9; 97-3 at 8–9 § 3.2.4.) Because the payments will be distributed on a pro rata basis based on the number of qualifying workweeks each PAGA member worked, some PAGA Employees will receive a higher allocation while others will receive a lower allocation. (*See* Doc. No. 97-3 at 8–9 § 3.2.4.) Other courts have approved similar PAGA payment amounts. *See, e.g.*, *Granados v. Hyatt Corp.*, No. 23-cv-01001-H-VET, 2024 WL 3941828, at *2 (S.D. Cal. Aug. 26, 2024) (approving PAGA settlement with average payment of $5.17).

Moreover, the Court notes that the $30,000 PAGA settlement represents 7.5% of the Gross Settlement Fund's $400,000. This is higher than the range of PAGA settlements approved by California district courts. *See, e.g.*, *Alcala v. Meyer Logistics, Inc.*, No. CV 17-7211-PSG-AGRx, 2019 WL 4452961, at *9 (C.D. Cal. June 17, 2019) (collecting cases approving PAGA settlements representing 0–2% of the gross settlement fund).

Against this backdrop and taking into consideration the Court's prior analysis, the Court is preliminarily persuaded that PAGA's interests are satisfied by the $30,000 PAGA settlement.

### 3. Conclusion

The Court is preliminarily satisfied that the PAGA settlement meets PAGA's statutory requirements and is fair, adequate, and reasonable.

## V. CONCLUSION

For the foregoing reasons, the Court enters the following orders:

(1) **Conditional Class Certification**: The Court **GRANTS** the parties' joint motion for conditional certification of the Settlement Class and the PAGA Employees class. (Doc. No. 97.) The Court **APPOINTS** Plaintiff Mark Hendrickson as Class Representative and Vilmarie Cordero of Arch Legal, P.C., as Class Counsel.

(2) **Preliminary Approval of Settlement**: The Court finds, on a preliminary basis, that the proposed Class and PAGA Settlements appear to be fair, adequate, and within the range of reasonableness. Additionally, for similar reasons, the Court finds on a preliminary basis that the proposed PAGA Settlement is reasonable. Accordingly, the Court **GRANTS** the joint motion for preliminary approval of the Class and PAGA Settlements. (Doc. No. 97).

(3) **Notice of Settlement**: The Court finds the proposed Notice to be consistent with the requirements of Rule 23 and due process, and that the Notice provides the best practicable notice under the circumstances. Accordingly, the Court **APPROVES** the proposed Notice.

(4) **Settlement Administration**: The Court **APPOINTS** Apex as the Settlement Administrator to supervise and administer the notice procedure in connection with the Settlement as well as the processing of claims as set forth in the Settlement Agreement. The Court **APPROVES** the implementation schedule of the Notice Process.

(5) **Briefing Schedule**: The motions for (A) final approval of class action settlement and (B) attorney fees and costs must be filed and served on all parties on or before **January 21, 2027**. Responses—including either an opposition or a notice of non-opposition for any motion not filed jointly, or any response by LWDA—must be filed and served on counsel for all parties no later than **February 4, 2027**. Any reply must be filed

and served on counsel for all parties on or before **February 11, 2027**. The motions must also address the following:

- the legal and factual basis supporting the request for a $10,000 incentive award;
- the estimated number of hours Hendrickson has expended to further this litigation;
- the average settlement payment to the unnamed class members;
- whether Hendrickson can be expected to fairly evaluate the value of the average settlement payment when he would receive an up to $10,000 incentive award;
- the basis for the requested attorney fees, addressing all of the Ninth Circuit's applicable factors;
- what documentation justifies the requested attorney fees;
- what declarations address the reasonableness of the requested hourly rate, considering the prevailing rates for counsel of comparable experience, skill, and reputation in the **Southern District of California**; and
- what itemized records reflect the requested litigation costs.

(6) **Final Approval Hearing**: The Court sets a Final Approval Hearing for **April 15, 2027, at 10:00 AM** in Courtroom 4A of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101. The Court will consider:

- Whether the proposed Class and PAGA Settlements should be approved as fair, reasonable, and adequate;
- Whether Class Counsel's requested attorney fees and costs are reasonable;
- Whether Hendrickson's incentive award is appropriate; and
- Whether the Settlement Administrator's expenses are reasonable.

**IT IS SO ORDERED.**

Dated: October 13, 2026

Hon. Anthony J. Battaglia
United States District Judge